UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE L. BOONE, | ) | 5:14CV0642 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | (Mag. Judge Kenneth S. Mchargh) |
| | ) | |
| ALAN LAZAROFF, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

The petitioner Willie L. Boone ("Boone") has filed this petition pro se for a
writ of habeas corpus, arising out of his 2011 convictions for robbery, resisting
arrest, and escape, in the Summit County (Ohio) Court of Common Pleas.  Boone
raises three grounds[1] for relief:

> 1.  Violation to the Due Process Clause of the Fifth Amendment of the
> United States Constitution, which Prohibits the admission of
> identification obtained from overly suggestive procedures that could
> lead to an irreparably mistaken identification.  And
>
> Violation to the Due Process Clause of the Fourteenth Amendment of
> the United States Constitution; protects the accused against conviction
> except upon proof beyond a reasonable dou[b]t of every fact necessary
> to constitute the crime with which he is charged.

---

[1]  Boone's petition simply set forth the supporting facts, without specifying the
grounds themselves.  See generally doc. 1, § 12.  With leave of court, Boone filed an
amendment listing the grounds.  (Doc. 6.)

2.  Ground two for Relief:  Is the same Constitutional violations raised in Ground one.  Violations to the Due Process Clause of the Fifth and Fourteenth Amendment[s] to the United States Constitution.

3.  Ground three for Relief:  Is the same Constitutional violations raised in Ground one and Ground two.  Violations to the U.S. Due Process Clause of the Fifth and Fourteenth Amendment[s].

(Doc. 6; doc. 1, petition.)  The respondent filed a Return of Writ (doc. 8), and Boone filed a Traverse (doc. 10).

## I.  PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural background:

> On May 14, 2010, a man disguised with glasses and a long wig burst through the doors of a Key Bank branch on Romig Road in Akron and demanded money from the tellers. An Akron police officer working special duty in the bank noted the man and approached him from behind with his gun drawn. The officer ordered the robber to the ground but, as he tried to holster his firearm in order to handcuff the suspect, the robber leapt to his feet and fled toward the door. The officer grabbed him from behind, and a scuffle ensued just outside the bank. The officer successfully wrestled the robber to the ground again, but was unable to handcuff and arrest him because he "buck[ed] * * * up and down," threw the officer to the ground, and ran away. The officer pursued the robber on foot until he saw him run toward a waiting vehicle and jump inside as the vehicle drove away.

> Boone's girlfriend had rented the vehicle for the benefit of Boone's family, and an interview with her led police to suspect Boone, whom they ultimately arrested. A jury found him guilty of robbery in violation of R.C. 2911.02(A)(3), resisting arrest in violation of R.C. 2921.33(A), and escape in violation of R.C. 2921.34(A)(1). The trial court sentenced him to a total prison term of eight years, including a ninety-day term for resisting arrest, a first-degree misdemeanor.

2

(Doc. 8, RX 25, at 1-2; State v. Boone, No. 26104, 2013 WL 3280238, at *1 (Ohio Ct.

App. June 26, 2013).)

      Boone appealed his conviction, presenting five assignments of error:

      1.  Whether Court erred in denying the indigent Pro Se[2] Appellant-
Defendant's Sixth Amendment rights were violated as afforded by the
United States Constitution?

      2.  Whether if the Court erred in stating to the indigent Pro Se
Appellant-Defendant's he had three (3) days to waive his rights to
Appeal the conviction without ensuring that Appellant-Defendant
completely understood the terms and conditions of said waiver?

      3.  Whether the Court erred by not dismissing the escape charge of the
Pro Se Appellant-Defendant when they were based on a Felony2
robbery which defendant was found not guilty.

      4.  Whether the Court Erred in denying Appellant-Defendant's request
for an DNA Expert and suppression of States expert.

      5.  Whether the Court erred in denying the Defendants constitutional
rights to a speedy [trial].

(Doc. 8, RX 11, at 6.)  The court of appeals affirmed Boone's conviction on July 11,

2012.  (Doc. 8, RX 13; State v. Boone, No. 26104, 2012 WL 2834656 (Ohio Ct. App.

July 11, 2012).)

      Boone submitted a pro se motion for reconsideration under Ohio App. Rule

26(A), which the court denied as untimely.  (Doc. 8, RX 14-15.)

---

[2]  Appellate counsel refers to Boone as "Pro Se" in his brief on appeal.  The
record shows that Boone was appointed counsel, but proceeded assisted by "stand by"
counsel at trial, and Boone was represented by separate counsel on this appeal.  *See
generally* doc. 8, RX 2, RX 6 and RX 10-11.

Boone filed a timely appeal to the Supreme Court of Ohio, raising the following proposition of law:

> 1. When an offender is under detention in the form of a police arrest for an offense identified in [Ohio Rev. Code §] 2921.34(C)(2)(a), and breaks that detention, that offense cannot serve as the predicate felony for a second-degree-felony escape if it is dismissed before trial, or is committed after, or at the same time, the detention is broken.

(Doc. 8, RX 17.)  On Oct. 24, 2012, the state high court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 8, RX 19; State v. Boone, 133 Ohio St.3d 1426, 976 N.E.2d 916 (Ohio 2012).)

While his direct appeal was pending before the state supreme court, Boone moved pro se to reopen his appeal under App. Rule 26(B).  (Doc. 8, RX 20.)  The state court of appeals granted his motion to reopen, and appointed appellate counsel for Boone. (Doc. 8, RX 22.)

Through counsel, Boone presented thirteen (13) assignments of error in his appeal:

> 1.  Defendant's convictions are against the manifest weight of the evidence.
>
> 2.  The trial court committed reversible and/or plain error when it overruled defendant's Crim. R. 29(A) motion for judgment of acquittal because the state presented insufficient evidence to sustain a conviction.
>
> 3.  The trial court committed reversible and plain error when it failed to merge counts 3 and 4 for sentencing purposes as they were allied offenses of similar import.
>
> 4.  The trial court committed reversible and plain error by admitting photographs of the crime scene that had not been properly

4

authenticated and which denied him his constitutional right to
confrontation.

5.  Boone was denied his constitutional right to effective assistance of
counsel at trial when his trial counsel failed to object at trial regarding
the admission of photographs of the crime scene from the bank video
that had not been properly authenticated and for which he was denied
his constitutional right to confrontation.

6.  The trial court committed reversible and plain error by sentencing
Boone without crediting to his sentence of incarceration the number of
days that he was confined prior to conviction and sentence.

7.  Boone was denied his constitutional right to effective assistance of
counsel at trial when his trial counsel failed to object at his sentencing
hearing that the trial court was required to determine Boone's number
of days of confinement before sentence was imposed.

8.  The trial court committed reversible and plain error in assessing
court costs against Boone without complying with [Ohio Rev. Code §]
2947.23(A).

9.  Boone was denied his constitutional right to effective assistance of
counsel at trial when his trial counsel failed to argue that the trial
court's imposition of court costs under [Ohio Rev. Code §] 2947.23(A)
was defective.

10.  The trial court committed reversible and plain error in assessing
attorney fees against defendant without complying with [Ohio Rev.
Code §] 2941.51(D), and not doing so in open court.

11. The trial court committed reversible and plain error by sentencing
Boone without complying with [Ohio Rev. Code §] 2929.19(B)(2)(g).

12.  Boone was denied his constitutional right to effective assistance of
counsel at trial when his trial counsel failed to object to the trial
court's failure to sentence Boone in accordance with [Ohio Rev. Code §]
2929.19(B)(2)(g).

13.  The cumulative effect of the trial court's errors denied Boone a fair
trial and sentencing hearing.

(Doc. 8, RX 23.)

The state court of appeals affirmed Boone's conviction on June 26, 2013, but sustained his eighth and tenth assignments of error, and remanded for a new sentencing hearing. (Doc. 8, RX 25, at 16; Boone, 2013 WL 3280238, at *10.)

Boone moved for reconsideration under App. Rule 26(A), but the court denied his motion as untimely. (Doc. 8, RX 26-27.)

On Dec. 10, 2013, Boone filed an appeal pro se to the Supreme Court of Ohio, raising the following proposition of law:

> The State prosecution contend that DNA found on the clothing that the robber of Key Bank wore, identify appellant Willie Boone as the culprit. However there was several other DNA's on the evidence besides Mr. Boones.
>
> This poses questions to the U.S. Constitution due process clause of the Fifth and Fourteenth amendment[s].
>
> This case gives the court an opportunity to properly define what constitutes a proper inference for a jury to draw when making determinations of guilt.

(Doc. 8, RX 29.) On March 12, 2014, the court declined to accept jurisdiction of the appeal. (Doc. 8, RX 31; State v. Boone, 138 Ohio St.3d 1436, 4 N.E.3d 1052 (2014).)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

6

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2002).  See also Lorraine v. Coyle, 291

F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v.

Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court

considers the state decision to be erroneous or incorrect.  Rather, the federal court

must determine that the state court decision is an objectively unreasonable

application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Boone has filed his petition pro se.  The pleadings of a petition drafted by a

pro se litigant are held to less stringent standards than formal pleadings drafted by

7

lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th
Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519
(1972) (per curiam)).  Other than that, no special treatment is afforded litigants
who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993)
(strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th
Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III.  PROCEDURAL DEFAULT

The respondent contends that the first ground of the petition has been
procedurally defaulted, in part.  (Doc. 8, at 11-14.)  The respondent argues that
Boone's assertion that the photo identification procedures were overly suggestive is
defaulted because he failed to fairly present that argument to the state court of
appeals.  Id. at 11-12.

A habeas claim may be procedurally defaulted in two distinct ways.  First, by
failing to comply with state procedural rules.  Williams v. Anderson, 460 F.3d 789,
806 (6th Cir. 2006) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)).
Second, by failing to raise a claim in state court, and to pursue the claim through
the state's ordinary review process.  Williams, 460 F.3d at 806 (citing O'Sullivan v.
Boerckel, 526 U.S. 838, 848 (1999)).

A habeas petitioner cannot obtain relief unless he has completely exhausted
his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991);

Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845.  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell, 274 F.3d at 349).

Res judicata would bar Boone from litigating any issues which could have been raised on direct appeal, but were not.  State v. Perry, 10 Ohio St.2d 175, 180, 226 N.E.2d 104, 108 (1967).  The Supreme Court of Ohio will not consider a constitutional question which was not properly raised and argued in the lower courts.  Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); Adams, 484 F.Supp.2d at 769; City of Wooster v. Graines, 52 Ohio St.3d 180, 185, 556 N.E.2d 1163, 1168 (1990) (citing cases); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).

9

The first part of Boone's first ground for relief claims that the trial court improperly admitted evidence of "identification obtained from overly suggestive procedures that could lead to an irreparably mistaken identification." (Doc. 6, at 2.) However, contrary to the argument of respondent, Boone does not refer to any overly suggestive photo identification procedures.  See generally doc. 8, at 11-12. Rather, Boone's supporting facts make it clear that he is concerned with DNA evidence:

> DNA expert testified a mixture of DNA on the evidence, DNA expert testified a different test of the evidence could show different results of DNA on evidence, DNA expert testified she cannot tell time frame how long DNA has been on an item, DNA expert testified she cannot place Willie L. Boone in Key Bank.  Detective Harrah testified his making a leap saying Boone robbed Key Bank.

(Doc. 1, § 12, at p. 6; see also doc. 8, at 7.)

The question for this court is whether Boone raised this argument before the state court of appeals.  The fourth assignment of error on Boone's first appeal was: "Whether the Court Erred in denying Appellant-Defendant's request for an DNA Expert and suppression of States expert."  (Doc. 8, RX 11, at 22.)  This assignment of error had two elements, (1) denial of Boone's request for an expert, which claim he does not raise in his petition, and (2) denial of his request to suppress the state's expert testimony.  Boone argued that the state failed to establish his identity beyond a reasonable doubt, in that no eyewitness ever positively identified him, and the state thus "relied solely on the DNA evidence using a proven questionable scientific method."  (Doc. 8, RX 11, at 22.)

As to the admission of the DNA evidence, the state court ruled as follows:

Mr. Boone argues that the trial court should not have allowed the State's expert to testify about her findings regarding the DNA found on the robber's wig because he had not been provided funds to have the samples independently analyzed.  He also suggests that the expert's testimony was unduly prejudicial because it was based on a "proven questionable scientific method * * *."

However, Mr. Boone does not actually point to any evidence in the record that would support the conclusion that the State's expert used a questionable method to analyze the DNA samples.  See App.R. 16(A)(7).  Instead, he makes vague assertions without any citations to any authority.  For example, he asserts that "[i]t is commonly known that it is misleading to talk of DNA profiling as 'genetic fingerprinting[.]'"  He also claims that "[t]he use of match probabilities has been criticized on the basis that jurors, as ordinary members of the community, generally do not understand probabilities * * *."  In the absence of any evidence in the record that would call the validity of the State's expert's testimony into doubt, Mr. Boone's challenge to the method used by the State's expert would be more properly raised in a postconviction proceeding where new evidence could be admitted than on appeal.

(Doc. 8, RX 13, at 4-5; Boone, 2012 WL 2834656, at *3.)  In affirming his conviction, the state appellate court found that Boone had not demonstrated that the trial court had committed any reversible error.   (Doc. 8, RX 13, at 7; Boone, 2012 WL 2834656, at *4.)

The court finds that Boone did raise the first part of his first ground for relief, that the trial court improperly admitted evidence of "identification obtained from overly suggestive procedures that could lead to an irreparably mistaken identification," before the state court of appeals.  However, as set forth earlier, Boone "must give the state courts one full opportunity to resolve any constitutional

11

issues by invoking one complete round of the State's established appellate review process," O'Sullivan, 526 U.S. at 845, which requires that the highest court in the state has been given an opportunity to rule on the claims, Rust, 17 F.3d at 160. Boone did not raise this claim before the Supreme Court of Ohio in his first appeal. See generally doc. 8, RX 17.

In his reopened appeal, allowed due to alleged ineffective assistance of appellate counsel, Boone did not raise the claim that the DNA evidence was the result of using a questionable scientific method.  See generally doc. 8, RX 23. Instead, he discussed the DNA evidence in the context of arguing that his conviction was against the manifest weight of the evidence.  (Doc. 8, RX 23, at 9, 12.)  Boone pointed out that his DNA was not the only DNA found on the shirt and wig, and that the other DNA was not tested.  (Doc. 8, RX 23, at 12.)  Thus, in his reopened appeal, Boone did not raise that claim that the trial court improperly admitted evidence of "identification obtained from overly suggestive procedures."

The state court of appeals stated that:  "Although DNA from more than one source was present on the wig and shirt that were submitted for testing, Boone could not be excluded as the major contributor of DNA."  (Doc. 8, RX 25, at 7; Boone, 2013 WL 3280238, at *4.)  The court also discussed the other aspects of his manifest weight claim, and concluded that his convictions were not against the manifest weight of the evidence.  (Doc. 8, RX 25, at 6-7; Boone, 2013 WL 3280238, at *4.)

The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); see also Brandon v. Stone, No. 06-5284, 2007 WL 786330, at *1 (6th Cir. March 15, 2007) (citing Williams v. Bagley, 380 F.3d 932, 969 (6th Cir. 2004)); Jalowiec v. Bradshaw, No. 1:03CV0645, 2008 WL 312655, at *24 (N.D. Ohio Jan. 31, 2008), aff'd, 657 F.3d 293 (6th Cir. 2011), cert. denied, 133 S.Ct. 107 (2012). That the factual basis for the theories is related would not save the claim. Lott v. Coyle, 261 F.3d 594, 607 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002). Those issues which were not fairly presented to the state courts cannot be considered here. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).

Boone cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata. State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." Williams, 460 F.3d at 806 (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)). Where state court

13

remedies are no  longer available to the petitioner, procedural default and not exhaustion bars habeas review.  Id.  Where the petitioner fails to demonstrate cause and prejudice to excuse the default, the claim is barred.  Id. at 807.  Boone does not demonstrate cause[3] for his failure to raise the claim, see generally doc. 10, thus the first part of the first ground is barred as procedurally defaulted.


## IV.  SUFFICIENCY OF THE EVIDENCE

The respondent contends that the remaining grounds of the petition are all based on the sufficiency of the evidence.  (Doc. 8, at 17.)

The second part of the first ground of the petition is:

Violation to the Due Process Clause of the Fourteenth Amendment of the United States Constitution; protects the accused against conviction except upon proof beyond a reasonable dou[b]t of every fact necessary to constitute the crime with which he is charged.

The second and third grounds of the petition are:

2.  Ground two for Relief:  Is the same Constitutional violations raised in Ground one.  Violations to the Due Process Clause of the Fifth and Fourteenth Amendment[s] to the United States Constitution.

3.  Ground three for Relief:  Is the same Constitutional violations raised in Ground one and Ground two.  Violations to the U.S. Due Process Clause of the Fifth and Fourteenth Amendment[s].

_____

[3]  A constitutional claim of ineffective assistance of counsel would not be available to excuse Boone's procedural default, because there is no right to counsel after the first level of direct appellate review.  *Coleman v. Thompson*, 501 U.S. 722, 756-757 (1991) (citing *Ross v. Moffitt*, 417 U.S. 600, 616 (1974), and *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987)).  *See also Morgan v. Eads*, 104 Ohio St.3d 142, 146, 818 N.E.2d 1157, 1161 (2004).

(Doc. 6; doc. 1, petition.)

The supporting facts for the first ground are given as:

DNA expert testified a mixture of DNA on the evidence, DNA expert testified a different test of the evidence could show different results of DNA on evidence, DNA expert testified she cannot tell time frame how long DNA has been on an item, DNA expert testified she cannot place Willie L. Boone in Key Bank.  Detective Harrah testified his making a leap saying Boone robbed Key Bank.

(Doc. 1, § 12, at p. 6.)

The supporting facts for the second ground are:

Aisha Holt testified she did not rent the SUV for Willie L. Boone, Aisha Hold testified she never saw Willie L. Boone in the SUV she rented, There is no evidence placing Willie L. Boone in SUV rented by Holt, There was never no in court or out of court identification made that Willie L. Boone robbed Key Bank, Description of robber does not fit Willie L. Boone, Witnesses picked several people in photo array and none was Willie L. Boone.

(Doc. 1, § 12, at p. 8.)  The supporting facts for the third ground are:

There is no evidence placing Willie L. Boone at the scene of the crime. The DNA expert testified there could be less DNA on an item if someone tried to prevent their DNA from being on an item.  Detective Harrah testified he never attempted to get a match on the other DNA profiles.

(Doc. 1, § 12, at p. 9.)

In his reopened appeal, Boone's first two assignments of error were: (1) a claim that his convictions were against the manifest weight of the evidence, and (2) a claim that the trial court erred when it overruled his Rule 29 motion for acquittal because the state presented insufficient evidence to sustain a conviction.  (Doc. 8,

RX 23.)  In his brief in support, Boone argued that both claims involved the same set of facts, thus they were argued together.  (Doc. 8, RX 23, at 9.)

Boone argued that the evidence presented by the state failed to meet the standard to show that he committed the crimes beyond a reasonable doubt.  Boone pointed out that no one identified him in the photo array, although Officer Belacic did choose three other people as possible suspects.  Boone noted that Officer Belacic identified the SUV as a black Chevy Suburban, although Holt had rented a silver one.  Boone contended that no one saw him in the SUV Holt rented, and that the police did not search or examine that vehicle.   (Doc. 8, RX 23, at 11.)

Boone claimed that the black shirt from which DNA evidence was recovered "is not conclusively the one that was worn by the bank robber as no one ever testified where it was found or how they know it is the same one that was worn by the bank robber."  Again, Boone raised the point that his DNA was not the only DNA found on the shirt and the wig.  Finally, Boone pointed out that the description provided of the bank robber did not match his characteristics.  (Doc. 8, RX 23, at 12.)

Although Boone briefed his first two assignments of error together, the state court of appeals addressed them separately.  The court first addressed his argument that the trial court erred by denying his Rule 29 motion for acquittal based on insufficiency of the evidence.  The court stated that the identity of the perpetrator is an element which must be proven beyond a reasonable doubt, and that identity may

16

be proved by either direct or circumstantial evidence.  (Doc. 8, RX 25, at 4-5; Boone,

2013 WL 3280238, at *3.)  The court continued:

> According to witnesses, the robber wore a long-sleeved black shirt and
> a long wig. Police recovered the wig just outside the bank.  Officer
> Jason Belacic testified that he pursued the robber on foot until he fled
> in an SUV driven by another man.  When police traced the license
> plate number of that vehicle, they found that it had been rented by
> Boone's girlfriend for use by members of Boone's family.  They
> recovered a shirt that matched the description of the one worn by the
> robber near where the SUV was later found.  According to Stacey Violi,
> a forensic scientist employed by the Bureau of Criminal Investigation,
> Boone was the major contributor of DNA found on the wig and the
> shirt.
>
> Viewing this evidence in the light most favorable to the prosecution, a
> reasonable juror could conclude that Boone is the man who robbed the
> bank and escaped on foot.

(Doc. 8, RX 25, at 5; Boone, 2013 WL 3280238, at *3.)

The court then addressed Boone's claim that his convictions were against the

manifest weight of the evidence.  The court found his convictions were not against

the manifest weight of the evidence.  (Doc. 8, RX 25, at 5-7; Boone, 2013 WL

3280238, at *4.)  Boone does not raise a manifest weight claim in his petition; in

any event, any claim that his conviction was against the manifest weight of the

evidence cannot be considered by this habeas court.  Spence v. Sheets, 675

F.Supp.2d 792, 802-803 (S.D. Ohio 2009).

The state court did not rely on federal law in ruling on Boone's sufficiency of

the evidence claim but rather relied on state cases, including State v. Jenks, 61

Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), which followed the sufficiency of

evidence standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  (Doc. 8, RX 25, at 5; Boone, 2013 WL 3280238, at *3.)  Thus, the issue is whether the state court decision was an "unreasonable application" of clearly established federal law; in other words, whether the state court identified the correct governing legal principle from  Supreme Court decisions, but unreasonably applied that principle to the facts of Boone's case.  Williams, 529 U.S. at 410-412.

Under Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319; see also Cavazos v. Smith, 132 S.Ct. 2, 6 (2011) (per curiam); Bagby v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990).  As noted above, this was the standard applied by the state appellate court.  (Doc. 8, RX 25, at 5; Boone, 2013 WL 3280238, at *3.)  Thus, the state court identified the correct governing legal principle from Jackson v. Virginia.

Under Jackson, the habeas court does not make its own subjective determination of guilt or innocence.  Russell v. Anderson, No. 1:07CV3434, 2008 WL 4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing Herrera v. Collins, 506 U.S. 390, 402 (1993)); Talley v. Hageman, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing Herrera).  This court does not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury.  White v. Steele, 602 F.3d

707, 710 (6th Cir. 2009), cert. denied, 131 S.Ct. 130 (2010) (quoting Brown v.

Konteh, 567 F.3d 191, 205 (6th Cir. 2009)); Dover v. Warden, Belmont Corr. Inst.,

No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).

The Supreme Court recently emphasized that "it is the responsibility of the

jury — not the court — to decide what conclusions should be drawn from evidence

admitted at trial."  Cavazos, 132 S.Ct. at 4.  The Court stressed that Jackson

"unambiguously instructs that a reviewing court 'faced with a record of historical

facts that supports conflicting inferences must presume — even if it does not

affirmatively appear in the record — that the trier of fact resolved any such

conflicts in favor of the prosecution, and must defer to that resolution.'"  Cavazos,

132 S.Ct. at 6 (quoting Jackson, 443 U.S. at 326).  "A reviewing court may set aside

the jury's verdict on the ground of insufficient evidence only if no rational trier of

fact could have agreed with the jury."  Coleman v. Johnson, 132 S.Ct. 2060, 2062

(2012) (per curiam) (quoting Cavazos).

On habeas review, "the Jackson v. Virginia standard is so demanding that

'[a] defendant who challenges the sufficiency of the evidence to sustain his

conviction faces a nearly insurmountable hurdle.'"  Davis v. Lafler, 658 F.3d 525,

534 (6th Cir. 2011) (en banc), cert. denied, 132 S.Ct. 1927 (2012) (quoting United

States v. Oros, 578 F.3d 703, 710 (7th Cir. 2009)).  The Supreme Court recently

affirmed that "Jackson claims face a high bar in federal habeas proceedings."

Coleman v. Johnson, 132 S.Ct. at 2062.

19

A sufficiency of the evidence claim must be addressed "with explicit reference to the substantive elements of the criminal offense as defined by state law." Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting Jackson, 443 U.S. at 324 n.16).  Thus, the federal court must look to state law to determine the elements of the crime.  Cameron v. Birkett, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)).

The only element of the offense(s) which Boone has challenged is that his identity was not proved beyond a reasonable doubt.  Under Ohio law, identity is an element that must be proven by the state beyond a reasonable doubt.  (Doc. 8, RX 25, at 4-5; Boone, 2013 WL 3280238, at *3, citing State v. Flynn, No. 06CA0096, 2007 WL 4146284, at *3 (Ohio Ct. App. Nov. 26, 2007).)  The state found that, viewing the evidence in the light most favorable to the prosecution, a reasonable juror could conclude that Boone was the man who robbed the bank and escaped on foot.  (Doc. 8, RX 25, at 5; Boone, 2013 WL 3280238, at *3.)

Reviewing the state court's determination on this matter, this court cannot find that the state court decision is an objectively unreasonable application of federal law.  Boone has failed to demonstrate that the state court determination resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## V.  SUMMARY

The first part of the first ground of the petition has been procedurally defaulted.  As to the remainder of Boone's grounds, raising several variations of an insufficiency of the evidence claim, Boone has failed to demonstrate that the state court determination resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  The petition for a writ of habeas corpus should be denied.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.

Dated:   Jan. 22, 2015                   /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).